UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS F. CARLSON,

    Plaintiff,

    v.

UNITED STATES POSTAL SERVICE,

    Defendant.

Case No. 15-cv-06055-JCS

**ORDER DENYING MOTION FOR PARTIAL RELIEF FROM JUDGMENT**

Re: Dkt. No. 63

## I. INTRODUCTION

On August 18, 2018, the Court granted Carlson's summary judgment motion and denied the summary judgment motion of Defendant United States Postal Service ("Postal Service"). The Court ordered the Postal Service to produce to Carlson documents responsive to two requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, that did not redact out the names, titles and email addresses of certain individuals. The Court entered final judgment in favor of Carlson on August 21, 2017. Presently before the Court is Carlson's Motion for Partial Relief from Judgment ("Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing set for February 23, 2018** pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is DENIED.[1]

## II. BACKGROUND[2]

This case involves an effort on the part of Carlson to obtain information about an event that occurred on January 11, 2015, when an unidentified individual took a picture of him with a

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] A more detailed description of the facts and claims asserted in this action is set forth in the Court's summary judgment order, Docket No. 59.

cell phone while he was taking photographs and videos of a new post office in Santa Cruz, California ("the Santa Cruz Incident" or "Incident"). On January 14, 2015, after he was unable to determine through informal inquiries the identities of the individuals involved, Carlson emailed Claire Cormier, counsel for the Postal Service, who was counsel in an unrelated FOIA case before Judge Corley in which Mr. Carlson and the Postal Service were scheduled to conduct a settlement conference. He asked Cormier if she could assist him in identifying the individuals involved in the Incident, noting that this information might facilitate settlement. Cormier, in turn, forwarded the request to Postal Service attorneys Sheela Portonova, Sara Snyder and Jeremy Watson. Snyder and Watson conducted an informal investigation of the Incident and discussed the Incident with Carlson at the settlement conference, on January 16, 2015. They did not disclose the identities of the individuals involved, however.

On January 21, 2015, Carlson submitted a FOIA request to the Postal Service ("First FOIA Request") asking that the Postal Service to "provide all photographs that a postal employee took of [him] on Sunday, January 11, 2015 . . . and all records related thereto, including . . . any . . . records that will identify the name of the person who uses the device(s) that photographed [him.]" On May 4, 2015, Carlson submitted another FOIA request ("Second FOIA Request") for "all records, including e-mail messages, that employees in, or supporting, a FOIA Requester Service Center created or received relating to" Carlson's First FOIA Request.

Although Postal Service attorney Sheila Portonovo conducted some searches for documents responsive to Carlson's First FOIA Request starting on February 24, 2015, the Postal Service had provided no response as of December 24, 2015, when Carlson initiated this action. Potonovo renewed her search efforts after Carlson filed his complaint. She started searching again in January 2016, and on January 14, 2016 she sent a new search request "to capture all responsive records from the date of the incident to the date of the new search" to the Postal Service's Information Catalogue Program ("ICP"). Portonovo Decl. (Docket No. 40-6) ¶ 10. The Postal Service produced documents responsive to the First and Second FOIA requests on March 31, 2016. The documents contained redactions of material that the Postal Service claimed fell under FOIA Exemptions 5 and 6.

2

In this action, Carlson originally asserted his claims based on the Postal Service's failure to respond to his FOIA requests.[3] After the Postal Service produced responsive documents, the focus of his claims became the adequacy of the Postal Service's search for documents and whether the Postal Service properly claimed the exemptions upon which the redactions were based.

On summary judgment, the Postal Service claimed that it had conducted an adequate search and that the redactions were proper under Exemptions 5 and 6. According to the Postal Service, the material withheld under Exemption 5 was covered by attorney-client privilege, the work product doctrine and the deliberative process privilege. The Postal service argued that the information redacted under Exemption 6 – the names and email addresses of the individuals involved in the Santa Cruz Incident – was properly redacted because disclosure of the information constituted an unwarranted invasion of privacy. The Postal Service also provided a *Vaughn* index identifying the specific material withheld and exemptions upon which the redactions were based. The *Vaughn* index was created by Postal Service employee Janine Castorina.

In the course of briefing on the parties' summary judgment motions, the Postal Service submitted a letter from Ferdinand Sutanto to Carlson, dated March 9, 2015, responding to a letter that Carlson had sent to the Postal Regulatory Commission on January 24, 2015 regarding the Santa Cruz Incident. According to Carlson, he had never received the letter, which he saw for the first time when the Postal Service submitted it in connection with the parties' summary judgment motions.

In Carlson's summary judgment motion, he challenged the Postal Service's reliance on Exemptions 5 and 6 of FOIA as a basis for many of the redactions. Although he conceded that documents created before January 21, 2015 were likely protected by attorney-client privilege or as work product because they were created in connection with the January 16, 2015 settlement conference, he argued that there was a factual question as to whether documents created after he submitted his First FOIA Request were created in anticipation of litigation or instead, in order to respond to the FOIA request.

---

[3] Carlson also asserted a claim based on a third FOIA request. After the Postal Service produced responsive documents, he agreed to dismiss that claim as moot.

3

Carlson also asserted that the *Vaughn* index provided by the Postal Service was inadequate and unreliable. He noted that it did not distinguish between documents created in anticipation of litigation from documents created in the ordinary course of business. He also pointed to what appeared to be a misrepresentation of fact in Castorina's declaration, which stated that Portonovo and Matthew Connolly were involved in the investigation conducted in response to Carlson's January 14, 2015 request for assistance from Cormier even though Portonovo and Connolly's declarations suggested that they were *not* involved in that investigation. He also argued that as to some material for which attorney-client privilege was claimed, the timing of some of the documents, or unredacted content, raised questions about whether the documents were prepared "in anticipation of litigation," as claimed on the *Vaughn* index. Because of these problems with the *Vaughn* index, Carlson asked the Court to conduct an *in camera* review of the unredacted documents to determine whether Exemption 5 applied to the redacted material.

With respect to the adequacy of the Postal Service's search, Carlson did not challenge the scope of the search generally, but he did assert that the search was inadequate as to "one key record generated during the FOIA search for records, a report of the search of email records, including search terms," which was in an email from a technician to counsel. Carlson asserted that records of the search should have existed independently of the communication with counsel and the fact that no such records were produced indicated that the Postal Service had conducted an inadequate search.

At oral argument, Carlson dropped his request that the Court conduct an *in camera* review of responsive documents, stating that he was seeking only the identities of the individuals involved in the Incident "thanks to the additional declaration that Ms. Cormier provided in her reply." In Cormier's reply declaration, she stated, in relevant part:

> 4. I have reviewed both the redacted and unredacted versions of the documents provided to Plaintiff in response to the two FOIA requests at issue in this case. Though a few of the Count One documents mention in passing that Plaintiff had submitted a FOIA request, and a few are to or from Postal Service personnel that I am informed and believe have FOIA-related responsibilities, none of the redacted information shows efforts to respond to the FOIA request.

Docket No. 50-2. Carlson also dropped his challenge to the adequacy of the search with respect to

4

records reflecting the search terms used by the Postal Service in conducting its search for responsive records.

The remaining question before the Court on summary judgment was whether the names, titles and email addresses of the individuals involved in the Santa Cruz Incident could be withheld under either Exemption 5 (attorney-client privilege, work product doctrine and deliberative process privilege) or Exemption 6 (unwarranted invasion of privacy). The Court concluded that they could not and ordered the Postal Service to produce the responsive documents without redaction of this information. It then entered final judgment in favor of Carlson.

In the Motion, Carlson asks the Court to vacate its judgment under Rule 60(b)(3) of the Federal Rules of Civil Procedure, conduct an *in camera* review of documents responsive to his First FOIA Request to determine the applicability of Exemption 5 and order a new search for responsive records. Carlson's basis for seeking to reopen the case is a document that Defendants inadvertently produced to him, in response to the Court's Order, without redaction. Specifically, among the documents Defendants produced to Carlson on September 12, 2017 was an email dated January 25, 2015 from Molly Hofman (apparently the photographer in the Santa Cruz Incident) to Jeremy Watson, responding to an email from Watson that was sent earlier that day. Although the email content was redacted from a number of the documents containing the same email thread, in one document it was not. The email from Hofman states: "Was the phone you used to take the picture a Postal phone? No, the phone was my personal phone." Carlson Decl. (Docket No. 64), Appendix 1. The documents produced by Defendants reflect that the next day, Watson forwarded the email to Sheela Portonovo. *Id*.

Carlson contends the email from Hofman is clear and convincing evidence that both Watson's email to Hofman (the content of which was redacted but can be inferred from Hofman's email) and Hofman's response were related to his FOIA request rather than the "law department's investigation of Plaintiff's complaint," and therefore, that the Postal Service misrepresented the nature of these documents when it claimed (both in the *Vaughn* index and in Cormier's reply declaration) that they were protected as work product and on the basis of attorney-client privilege. Carlson argues that because the Postal Service has again shown that it is untrustworthy, and

5

because he relied on its misrepresentations, the Court must step in and conduct the *in camera* review he originally requested.

In the Motion, Carlson also asks the Court to address the question of whether the Postal Service conducted an adequate search. Although he stipulated at oral argument that he was not challenging the adequacy the search, he says that he has since realized that Portonovo's declaration was ambiguous as to how she conducted the new search in 2016 and that she may not have searched for "all responsive records," notwithstanding her statement to the contrary. One indication that the Postal Service did not conduct an adequate search, he asserts, is the fact that the Sutanto letter was not part of the Postal Service's FOIA response. Carlson acknowledges that he could have raised this issue during the briefing or at oral argument, but contends he was entitled to assume that Portonovo acted in good faith when she interpreted his FOIA request and stated that she had conducted a search for "all responsive documents." Carlson contends Portonovo's statement is another misrepresentation of fact that warrants vacating the judgment under Rule 60(b).

## III.   ANALYSIS

### A.   Legal Standard

Pursuant to Rule 60(b)(3), a court may vacate a final judgment where the moving party establishes by clear and convincing evidence that the judgment was "obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case." *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986).

### B.   Whether Carlson Has Presented Clear and Convincing Evidence that The Judgment Should be vacated to Conduct *In Camera* Review of Exemption 5 Redactions

Carlson contends the content of the Hofman email is clear and convincing evidence that the Postal Service misrepresented the nature of the responsive documents that it redacted under Exemption 5. The Court disagrees.

While Carlson's theory that the Watson and Hofman emails were part of the Postal Service's effort to respond to his FOIA request is plausible, it is also plausible that these emails

6

were part of the investigation that was conducted in response to Carlson's inquiry to Cormier on January 14, 2015. In particular, while the question of whether the device used to take the photograph belonged to the Postal Service had implications for the Postal Service's FOIA response, it was also important to its ability to have a complete understanding of the Incident in connection with its investigation of Plaintiff's complaint. The Postal Service's assertion that these communications were part of its investigation of Carlson's complaint is also consistent with the fact that Jeremy Snyder, to whom Hofman responded in her email, was one of the individuals who conducted that investigation.

Nor does the fact that Watson forwarded Hofman's email to Portonovo the next day, on January 27, 2015, support a strong inference that the information was obtained for the FOIA request. While it is true that Portonovo conducted the search for responsive documents, her declaration indicates that she did not conduct her first search until February 24, 2015, almost a month after the email exchange between Watson and Hofman. Given that Portonovo was also copied on the email from Cormier to Snyder and Watson that began the internal investigation of Carlson's complaint, the fact that the Hofman email was passed on to her is not necessarily inconsistent with the Postal Service's claim that the email exchange between Watson and Hofman was part of its investigation and not in response to Carlson's FOIA request.

The Court concludes that the content of the Hofman email is not clear and convincing evidence of misrepresentation that warrants vacating the Court's judgment under Rule 60(b)(3) to conduct an *in camera* review of the responsive documents.

### C. Whether Carlson Has Presented Clear and Convincing Evidence that the Judgment Should be Vacated to Allow Carlson to Revive His Challenge to the Scope of the Postal Service's Search for Responsive Documents

Carlson also contends Portonovo's statement that she searched for "all responsive documents" constitutes a misrepresentation that justifies vacating the judgment under Rule 60(b)(3). He concedes, however, that he could have raised this issue before the Court entered judgment. Consequently, even assuming Portonovo's statement was a misrepresentation or constituted misconduct, it did not prevent Carlson from "fully and fairly" presenting his case as all of the grounds for challenging her statement were as apparent *before* the Court entered judgment

7

as they are now. Furthermore, to the extent that Portonovo included in her declaration a detailed description of how she searched for responsive documents, the mere fact that her description may have been ambiguous in some respects is not clear and convincing evidence that she intentionally misrepresented the facts when she said she searched for all responsive documents.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: February 16, 2018

_____
JOSEPH C. SPERO
Chief Magistrate Judge